Chiquita Mining Company, Limited v. Commissioner.
Chiquita Mining Co. v. Commissioner
Docket No. 108263.
United States Tax Court
1943 Tax Ct. Memo LEXIS 523; 1 T.C.M. (CCH) 387; T.C.M. (RIA) 43010; January 5, 1943
*523 N. J. Sandrach, C.P.A., for the petitioner. E. A. Tonjes, Esq., for the respondent. ARUNDELL
Memorandum Opinion ARUNDELL, Judge: Deficiencies in income taxes have been determined for the years 1936 and 1938 in the respective amounts of $3,785.84, $5,299.15 and for the year 1938 there was also determined a deficiency in excess profits taxes in the sum of $3,266.97. Two issues are raised by the pleadings: (1) the proper allowance for depletion and (2) the allowable depreciation. No evidence was offered on the first issue and respondent's determination on this point is consequently approved. The parties have agreed on the cost of the depreciable machinery and equipment here in dispute, leaving only the useful life of that property for determination. The respondent based his determination on a finding that the property had a 10-year life, while petitioner claims that the useful life was not more than five years. Petitioner was organized under the laws of Nevada with its principal office at Goodsprings, Nevada and its returns for the taxable years were filed with the Collector for the State of Nevada. It commenced the operation of its plant on a revenue producing basis in August 1936. *524 Operations were continued until July 1941, at which time all operations ceased because of the disappearance of commercial ore that it would pay to mine and mill. The cost of mining and milling machinery up to the time when petitioner commenced operations in 1936 was $101,703.30; additions in 1937 cost $15,849.61; additions in 1938 cost $6,424.06; and in 1939 there was expended in addition $5,910.51, making a total cost of $129,887.48. These amounts were agreed to by the parties. A large part of the equipment here involved was bought as a unit from an old mining camp near Tonopah, Nevada. The plant so purchased was dismantled and moved to its present location, where, after being overhauled and new parts used to replace old parts, where necessary, it was finally installed. The old mill had been set up and torn down many times before it was acquired by petitioner. It was petitioner's purpose to use the mill so constructed as a test mill to determine the best method of treating the ore and it was not contemplated at the time of its erection that it could be used many years. The reason for this fact was that the ores initially being treated were an oxide and after their exhaustion the *525 ores expected to be encountered were a sulphide, which ores required an entirely different process and mill for their treatment. None of the large or important items constituting the plant was new and the life of this machinery and equipment was not more than one-half that of new machinery and equipment. The cost of moving the old plant to its present location and reconditioning it was high and it turned out that it would have been more economical to have purchased much of the machinery new. When the mine closed the general condition of the equipment was very poor, and one of the two ball mills had already been completely abandoned. The capacity of the mill was more than cut in two at this time and it would have cost from $20,000 to $25,000 to put it in operating condition, and even after this expenditure it would have been only about seventy per cent efficient. When the mine closed there was no further use for the machinery and equipment and the salvage value of the plant at that time was approximately $13,000. The milling and mining machinery was not of a type, nor of a capacity, that would be suitable for the mining and milling of the sulphide ore, which had then been encountered *526 in its operations. Considering the entire evidence, we are of the opinion that depreciation on the property involved should be allowed on the basis of a five-year life. Decision will be entered under Rule 50.